UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

STEVEN RODNEY C.,[1]

                Plaintiff,

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

Case No. 2:20-CV-01753-YY

OPINION AND ORDER

YOU, Magistrate Judge.

     Plaintiff Steven Rodney C. seeks judicial review of the final decision by the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§

401-433, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the

Act, 42 U.S.C. §§ 1381-1383f.  This court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, that decision is

REVERSED and REMANDED for further proceedings consistent with this decision.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

**DISCUSSION**

**I.    Step Five**

Plaintiff first contends the ALJ erred by finding, at step five, that plaintiff could perform jobs that require more ability than indicated by the residual functional capacity ("RFC").

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

> A claimant must be found disabled if she proves: "(1) that she is not presently engaged in a substantial gainful activity; (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations." *Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir.2002). If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by

proving at step four that "in addition to the first two requirements, ... she is not able to perform any work that she has done in the past." *Id.* Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." *Id.* This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007).  As stated, the claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five.  *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Here, the ALJ assessed plaintiff's RFC as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasional stooping, crawling, crouching; frequent balancing, and climbing ramps and stairs; and never climbing ladders, ropes, or scaffolds. He must avoid concentrated exposure to cold and vibrations and must avoid moderate exposure to hazardous, moving machinery and unprotected heights. The claimant is limited to simple, routine tasks with no more than occasional public interaction. He is further limited to no more than occasional changes and occasional decision making in the work setting. The claimant would need to alternate positions every 30 minutes from sitting to standing and from sitting to standing while remaining on task.

Tr. 24.  At step five, the ALJ found that considering plaintiff's age, education, work experience, and the RFC, there are jobs that exist in significant numbers in the national economy.  Tr. 29. The ALJ relied on the testimony of a vocational expert who testified that, given these factors, an individual would be able to perform the requirements of representative occupations such as:

• Office Helper (DOT #239.567-010): light, unskilled work, Specific Vocational Preparation (SVP) of 2 (*available at* 1991 WL 672232).
• Small Products Assembler (DOT #739.687-030): light, unskilled work, SVP of 2 (*available at* 1991 WL 680180); and
• Electronics Worker (DOT #726.687-010): light, unskilled work, SVP of 2 (1991 WL 679633).

*Id.*

Plaintiff contends these jobs require a GED Reasoning Level of 2, but "[t]he ALJ's RFC is best understood as limiting Plaintiff to a GED Reasoning Level of 1." *Id.* The Dictionary of Occupational Titles ("DOT") contains a scale of six General Educational Development ("GED") levels. DOT, App. C (available at 1991 688702). Level 1 and 2 are defined as follows:

> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.*

Indeed, as plaintiff observes, the jobs of office helper, small products assembler, and electronics worker are all defined to employ Level 2 reasoning. *See* 1991 WL 672232, 1991 WL 680180, 1991 WL 679633. However, the RFC states that plaintiff "is limited to simple, routine tasks" and "is further limited to no more than occasional changes and occasional decision making in the work setting." This is very closely aligned with Level 1 reasoning, which is defined to include "simple" instructions and "standardized situations with occasional or no variables," i.e., routine tasks. The Commissioner argues the ALJ did not limit plaintiff to one- and two-step tasks. While that is true, one cannot ignore the language of the RFC, which otherwise so closely aligns with Level 1 reasoning.

The Commissioner also argues that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff could perform jobs with level two reasoning." Def. Br. 3. But this presupposes that the ALJ in fact found plaintiff could perform jobs with Level 2 reasoning. Again, the RFC appears to describe Level 1 reasoning, not Level 2 reasoning.

"The ALJ's failure to reconcile this apparent conflict is not harmless." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. 2015) (holding that the apparent conflict between the RFC and the demands of Level Two reasoning was not harmless). Other courts, faced with similar circumstances, have remanded cases for further proceedings. *See*, *e.g.*, *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016) (remanding due to "apparent conflict between an RFC that limits Henderson to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions"); *Bruster v. Saul*, No. 8:18-CV-02866-CMC-JDA, 2019 WL 4454527, at *12 (D.S.C. Aug. 30, 2019), *report and recommendation adopted,* No. CV 8:18-2866-CMC, 2019 WL 4447684 (D.S.C. Sept. 16, 2019) (remanding due to conflict between "simple, routine tasks, Plaintiff's additional mental limitations, and the DOT's indication that the identified jobs had a GED reasoning level of 2"). On remand, the ALJ must explain the conflict and, if necessary, recall the VE for additional questioning and clarification .

## II.   Medical Opinion Testimony

Plaintiff also claims the ALJ erred in rejecting the opinion by Physician Assistant-Certified ("PAC") Troy Landes.

### A.   Relevant Law

Plaintiff filed for benefits on May 31, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II and 20 C.F.R. § 416.920c governs under Title XVI. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions but rather determine which are most "persuasive." 20 C.F.R. §§

404.1520c(a)-(b), 416.920c(a)-(c).  To that end, controlling weight is no longer given to any medical opinion.  *Revisions to Rules*, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(a), (c)(1)-(5); 20 C.F.R. § 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability" means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(1).  "[C]onsistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors.  20 C.F.R. § 404.1520c(a), (b); 20 C.F.R § 416.920c(a),(b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020).  "The ALJ may but is not

required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

## B.    Whether the "Specific and Legitimate" Standard Still Applies

Under existing Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The regulations pertaining to applications filed before March 27, 2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit case law, gives treating sources more weight than non-treating sources, and examining sources more weight than non-examining sources. *See Standards for Consultative Examinations and*

*Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991);

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (adopting the "clear and convincing"

and "specific and legitimate" standards for rejecting treating and examining source medical

opinions); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ

wishes to disregard the opinion of the treating physician, he or she must make findings setting

forth specific, legitimate reasons for doing so that are based on substantial evidence in the

record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations

requires re-evaluation of the "specific and legitimate" standard for review of medical opinions.

*See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021),

*report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting

cases).  Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate

why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is

merely a benchmark against which the Court evaluates that reasoning."  *Scott D. v. Comm'r Soc.

Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§

404.1520c(a), 416.920c(a).

### C.    Analysis

PAC Landes completed physical and mental capacity assessments on April 11, 2018, Tr.

790, and June 13, 2018.  Tr. 715-19.  The ALJ recognized that, in PAC Landes' opinion, plaintiff

was "able to sit/stand/walk for more than 2 hours total in an 8 hour day; can lift no more than 20

pounds occasionally and 10 pounds frequently; and will be absent more than four times per

month as a result of his lower back pain," and that plaintiff had at most mild mental limitations

in all areas of functioning but would need extra breaks due to his back pain.  Tr. 27.  However,

the ALJ found PAC Landes' opinion was "unpersuasive" because it was "entirely unsupported by this source's own essentially normal findings on physical examination" and it was "also unsupported by the longitudinal record, which does not demonstrate anything more than conservative treatment for claimant's back impairment." *Id.*

Substantial evidence in the record supports the ALJ's conclusions. As the ALJ observed, plaintiff's MRI and x-rays of the lumbar spine "have shown degenerative disc disease, arthritis, and scoliosis." Tr. 25 (citing Tr. 697 ("[m]ild biconcave lumbar scoliosis," "moderate multilevel degenerative disc disease which is most significant at L2-3"). Moreover, the record supports the ALJ's finding that "physical examinations of the lumbar spine have shown some instances of reduced range of motion but essentially normal findings including full strength in the lower extremities, normal straight leg raise, and normal stance and gait." *Id.* For example, on February 1, 2017, PAC Landes observed that plaintiff had normal range of motion in his back, was able to walk on his toes and heals without "pain or difficulty," and had no deformity. Tr. 770. Medical records from March 13, 2018, show that plaintiff "should be able to do work-related activities such as sitting, standing, walking, carrying, handling objects, hearing, speaking and traveling," although he "would have some difficulty with lifting due to his lower back pain." Tr. 696; *see also* Tr. 812 (October 2018: "no gait anomaly"). Chart notes from May 7, 2019, indicate plaintiff "did not appear uncomfortable," his musculoskeletal findings "were normal," his gait and stance were normal, and no motor strength weakness was observed. Tr. 970. While plaintiff exhibited tenderness in the sciatic notch on the left, his lumbosacral spine motion was normal and his straight-leg raise test was normal bilaterally. *Id.* Chart notes from August 13, 2019, essentially reflect the same findings. Tr. 913. On November 5, 2019, plaintiff again did not appear uncomfortable, his musculoskeletal findings were normal, his lumbosacral spine

motion was normal, he exhibited normal gait and stance, and no weakness was observed.  Tr.
1025.  Additionally, this time, his sciatic notch on the left exhibited no tenderness.  *Id.*

The record also supports the ALJ's finding that plaintiff's "treatment has been
conservative and limited to Ibuprofen, Gabapentin, cryotherapy, and physical therapy with some
reported relief of his symptoms."  Tr. 27 (citing Exhibits 1F/5; 12F; 16F); *see* Tr. 695 (March
2018: "He takes ibuprofen 800-1200 mg once ad day and this does help some. . . They did
recommend epidural injections and he has not done this as of yet."); Tr. 816 (October 2018: "he
is not taking anything for the pain at this time."); Tr. 1019 (April 2019: ibuprofen and Tylenol
recommended, plus ice, heat, gentle stretching, and back exercises); *id.* (May 7, 2019: no further
MRI was indicated, referred for physical therapy, prescribed meloxicam); Tr. 1019-20 (May 22,
2019: plaintiff reported doing physical therapy "pretty faithfully" but stated he could do better,
over-the-counter camphor/capsaicin/menthol creams recommended); Tr. 1020 (June 2019:
"[c]ontinue physical therapy"); *id.* (July 2019: "[c]ontinue physical therapy," referred for pain
management, but opioids discouraged); Tr. 1021 (November 2019: "[h]as not tried ice or heat,
encouraged him to do so," stretching and physical therapy recommended).

It is unnecessary to address the ALJ's other reasons for rejecting PAC Landes' opinion.[2]
In evaluating PAC Landes' opinion, the ALJ considered whether the records were supportive of
and consistent with his conclusions.  Moreover, the ALJ provided specific and legitimate
reasons, supported by substantial evidence, to discount PAC Landes' opinion.  For these reasons,
the ALJ committed no reversible error in rejecting PAC Landes' opinion.

---

[2] The ALJ also found PAC Landes' opinion was inconsistent with plaintiff's reported activities
of daily living, and based on plaintiff's "subjective complaints and not on any objective clinical
findings.  Tr. 27.  It is unnecessary to reach these issues; any error would be harmless where the
ALJ provided other specific and legitimate reasons for rejecting PAC Landes' opinion.

**ORDER**

The Commissioner's decision is REVERSED and REMANDED for further proceedings

consistent with this opinion.

DATED  May 10, 2022.


_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge